**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
M.L. KING JR. FEDERAL BUILDING
50 WALNUT STREET, 3RD FLOOR
NEWARK, NJ 07102

**VINCENT F. PAPALIA**
**BANKRUPTCY JUDGE**

PHONE:  (973) 368-1244

January 23, 2024

<u>Via Regular Mail/E-Mail</u>

| | |
|---|---|
| Brett Silverman, Esq. | Manoj R. Andalkar, Esq. |
| *Counsel for the Debtor* | *Counsel for the Aggarwal Parties* |
| Concierge Law, P.L.L.C. | Andlakar Law, P.C. |
| 4 Terry Terrace | 456 Pond View Road |
| Livingston, NJ 07039 | Petersburg, NY 12138 |
| 646-779-7210 | 201-240-0429 |
| Email: brett@getconciergelaw.com | Email: manoj@andalkarlaw.com |

      RE:   In re Laura Cantor Inc.
              <u>Case No. 22-10406</u>

Dear Counsel:

      This letter opinion resolves the remaining open issue under the Settlement Agreement that was approved by this Court's November 16, 2023 Order (*Main Case 22-10406 Dkt.* ("*Main Dkt.*") *No.* 130); i.e., the Century 21 Dispute (as defined below).

    A.  <u>Introduction</u>

      The sole issue before the Court is who owns the Proof of Claim filed by the Debtor, Laura Cantor Inc. (the "Debtor"), in the Century 21 Bankruptcy Proceedings in the Southern District of New York (the "Century 21 Claim"). The Debtor asserts that it owns the Century 21 Claim. The Plaintiffs in the two related and now settled adversary proceedings, Everyday Luxury Brands, Inc. ("Everyday") and Pizzazz Fashion, Inc. ("Pizzazz"), along with their principal, Gaurav Aggarwal (collectively, the "Aggarwal Parties"), assert that the Debtor was acting as their agent in marketing and selling the Sonja by Sonja Morgan ("SBSM") goods that gave rise to the Century 21 Claim and that they own the Claim (the "Century 21 Dispute"). For the following reasons and based on the limited admissible evidence submitted to the Court on this issue, the Court determines that the Aggarwal Parties own the Century 21 Claim.

**LETTER OPINION**

Page 2
Re:         In re Laura Cantor Inc.
Case No.:   22-10406 (VFP)
Date:       January 23, 2024

---

    B.   General Background and Procedural History

    i.   *The Instant Bankruptcy Case*

The Debtor filed this Chapter 11 Subchapter V bankruptcy case as a small business debtor on January 18, 2022. *Main Dkt. No.* 1 at 1-2. In the petition, the Debtor included "Sonja by Sonja Morgan" (later removed) and "Eleven Commerce" as other names the Debtor used in the past eight years. *Id.*; *Main Dkt. No.* 134. In an initial declaration filed through its principal, Ms. Laura Cantor, a week after the petition, the Debtor explained that its primary revenue sources came from importing and selling apparel products under the SBSM brand. *Main Dkt. No.* 11 at ¶ 10. In that declaration, the Debtor stated that it "sells the SBSM products under an unwritten license agreement between Debtor and Everyday Luxury Brand, Inc." which the Debtor acknowledges is partially owned by Mr. Aggarwal. *Id.* at ¶ 11. The Debtor also asserted that Everyday did not significantly participate in SBSM business. *Id.* at ¶ 12. The Debtor further generally indicated that once it "selects the products it intends to purchase from a Vendor," the Vendor "will collect payment from the Debtor." *Id.*

    ii.   *The Two Adversary Proceedings*

At the early stages of this case, Pizzazz and Everyday each filed adversary proceedings against the Debtor. Less than two weeks after the Debtor filed the Petition, Pizzazz filed a complaint with a verification from Mr. Aggarwal as Pizzazz's sole owner which, among other things, sought an Order to Show Cause why the Court should not enjoin the Debtor from stating it does business as SBSM, including in this bankruptcy proceeding. *Adv. Pro. 22-1034 Dkt.* ("*1034 Dkt.*") *Nos.* 1; 2; *Main Dkt. No.* 16. The verified complaint alleged that Pizzazz is SBSM's Licensee and that the Debtor is a custodian and/or agent for various online businesses Pizzazz owns. *1034 Dkt. No. 1* at ¶¶ 13, 17. In a supporting certification, Mr. Aggarwal stated that only Pizzazz, not the Debtor, has a license from Everyday to use the SBSM trademark or intellectual property and that the Debtor does not hold any ownership interest, title, or other rights associated with Everyday or the SBSM business. *1034 Dkt. No.* 2-1 at ¶¶ 13-16. As a result, the Aggarwal Parties argued that the Debtor was not permitted to use the tradename and brand SBSM. *Id.* In response, the Debtor filed its own declaration (through Ms. Cantor). *1034 Dkt. No.* 9. In addressing SBSM, the Debtor again asserted it sells clothing products under the SBSM trademark "[t]hrough an unwritten license[,]" and that Laura Cantor allowed the Debtor to use the sonjabysonjamorgan.com domain that it purchased. *Id.* at ¶¶ 6, 13-14, 18-19.

Although Everyday held the SBSM license according to all parties, Everyday was not a party to the 1034 Adversary Proceeding. In an apparent effort to remedy this issue, Everyday subsequently filed its own adversary proceeding in April 2022 that similarly sought an Order to Show Cause that would prevent the Debtor from using SBSM trademarks, domains, or brands on the basis that the Debtor did not own or have a license to use SBSM intellectual property, which

**LETTER OPINION**

Page 3
Re:      In re Laura Cantor Inc.
Case No.:   22-10406 (VFP)
Date:    January 23, 2024

was exclusively owned by Everyday. *Adv. Pro. 22-1105 Dkt.* ("*1105 Dkt*.") *No.* 1-3 at ¶¶ 14-15, 34, 44. In support, Mr. Aggarwal attached a copy of the SBSM trademark registration in the name of Everyday and an email that allegedly showed the transfer of the SBSM domain to Everyday. *1105 Dkt. Nos.* 1-4; 1-5. Also attached to Everyday's pleading was a copy of the License Agreement from Everyday to Pizzazz that Mr. Aggarwal alleged these parties operated under. *1105 Dkt. Nos.* 1-3 at ¶¶ 41-45; 1-9. The Court subsequently consolidated these two related adversary proceedings with the consent of the parties. *1034 Dkt. No.* 29; *1105 Dkt. Nos.* 10; 18 at 4, lns. 1-4.

iii.      *The Settlement Agreement and The Temporary Injunction*

Shortly after Everyday filed its complaint in April 2022, the Court entered an Order to Show Cause requiring the Debtor to show cause why it should not be enjoined from using SBSM's intellectual property, among other forms of relief. *1105 Dkt. No*. 4. During a hearing on the Order to Show Cause on May 24, 2022, the parties and the Court discussed the terms of a possible settlement agreement. *1105 Dkt. No.* 18 at 8, lns. 8-13. With the involvement of the Court, the parties reached a settlement agreement that they then placed on the record on that date and entered into evidence a handwritten term sheet and addendum, marked as S-1, that reflected the terms of the settlement. *Id.* at 9, lns. 6-12. While acknowledging their agreement to the settlement terms placed on the record, the parties advised that they would prepare and submit a formal settlement agreement for this Court's approval pursuant to Bankruptcy Rule 9019. *Id.* at 23, lns. 13-17. As part of the settlement, and pending its approval and implementation, the Court issued a temporary injunction on terms agreed on by the parties that required, among other things, the Debtor to: (1) remove "d/b/a Sonja Morgan" from the petition; and (2) transfer the SBSM domain names to Everyday and/or Pizzazz. *1105 Dkt. No.* 15 at 2-3. The injunction also prevented the Debtor from representing it has any right to SBSM trademarks or domain names. *Id.*

iv.      *The Court's Carve Out of the Century 21 Dispute from the Settlement Agreement*

Due to various disputes, the parties were not able to agree upon the terms of the final settlement agreement for many months. Many of those disputes related to issues that were not part of the settlement placed on the record on May 24, 2022. *See, e.g.*, *Email Chain from the Aggarwal Parties' Counsel to the Court* (May 30, 2023). *See generally 1105 Dkt. No.* 18. With the exception of the Century 21 Dispute, the Court resolved all those disputes through additional hearings. The Court was unable to resolve the Century 21 Dispute based on the settlement agreement put on the record and applicable case law due to the disputed factual issues surrounding the ownership of the Century 21 Claim.

At a January 31, 2023 hearing, the Court and the parties agreed that the Court could resolve the Century 21 Dispute on the basis of the parties' written submissions, rather than through an evidentiary hearing. *Main Dkt. No.* 98 at 62-65, 114, lns. 21-23. On May 30, 2023,

**LETTER OPINION**

Page 4
Re:      In re Laura Cantor Inc.
Case No.:  22-10406 (VFP)
Date:    January 23, 2024

four months later, the Aggarwal Parties finally responded with a letter that attached various supporting documents. *Email Chain from the Aggarwal Parties' Counsel to Court* (May 30, 2023). Also on May 30, 2023, the Debtor's counsel submitted a letter that stated the products sold to Century 21 were the Debtor's and that the Debtor purchased, packaged, and sold the products to Century 21. *Email Chain from the Debtor's Counsel to Court* (May 30, 2023). In November 2023, due to the limited submissions on this issue, the Court gave the parties another, final opportunity to supplement the record on the Century 21 Dispute by specifically identifying evidence as to who purchased the goods that were sold to Century 21 and gave rise to the Century 21 Claim, as well as any other evidence they may deem relevant. *Email Chains from the Court to Counsel for the Debtor and Aggarwal Parties* (Nov. 7 and 14, 2023). No further evidence was submitted by the Debtor. The Aggarwal Parties responded by essentially repeating and referencing their previous positions in the submission made on May 30, 2023. *Email Chains from the Aggarwal Parties' Counsel to Court* (May 30, 2023; Nov. 7 and 14, 2023).

    v.        *Order Approving Settlement Agreement*

On November 16, 2023, after more submissions from the parties that disputed various terms of the settlement agreement that were resolved by the Court, the Court entered an Order approving the final form of the settlement agreement (the "Settlement Agreement"). *Main Dkt. No.* 130. However, as noted, the Settlement Agreement did not finally resolve the Century 21 Dispute. *Id.* at ¶ 4.[1]

  C.  <u>The Submissions and Arguments from the Parties regarding the Century 21 Dispute</u>

    i.        *The Evidence Before the Court*

The admissible evidence before the Court as to who owns the Century 21 Claim is limited and includes the Debtor and Aggarwal Parties' prior declarations and/or certifications in the adversary proceedings, the Proof of Claim submitted by the Debtor to the Southern District

---

[1] The Order states:
> As per the Approved Agreement, as discussed during the Hearings and pursuant to the subsequent consent of the parties, the Court will separately decide the dispute between the parties as to the ownership of the Century 21 Proof of Claim (the "Century 21 Dispute") "on the papers," i.e., on the basis of the submissions of the parties to date relating to the Century 21 Dispute, including the supplemental submissions made by the Aggarwal Parties on November 14, 2023, and without the need for an evidentiary hearing. In this regard, the Court notes that no supplemental submission was made by the Cantor Parties as to the Century 21 Dispute, as was permitted (but not required) by the Court.

**LETTER OPINION**

Page 5
Re:       In re Laura Cantor Inc.
Case No.: 22-10406 (VFP)
Date:     January 23, 2024

---

of New York Bankruptcy Court and, to a lesser extent, the business documents the Aggarwal Parties provided to the Court.

As previously noted, in her first day declaration submitted shortly after the Debtor's filing, Ms. Cantor generally asserted that Century 21 is indebted to the Debtor and that "the Debtor's wholesale business also included a wholesale relationship with Century 21." *Main Dkt. No.* 11 at ¶ 22. That declaration also described the SBSM business, which the Debtor operated pursuant to "an unwritten license agreement" with Everyday, and generally stated that the Debtor "selects the products it intends to purchase from a Vendor," and that the Vendor "will collect payment from the Debtor," without specifically referencing the Century 21 relationship. *Id.* at ¶¶ 11-12. In a subsequent declaration filed in opposition to the Order to Show Cause, Ms. Cantor again asserted that the Debtor had an unwritten license agreement with Everyday that was in effect from 2018 to use the SBSM intellectual property, including trade and domain names. *1034 Dkt. No.* 9 at ¶¶ 6-13, 17-20. Moreover, Ms. Cantor asserted that the Debtor paid Everyday $58,000 in royalty payments for use of the unwritten license. *Id.* at ¶ 14. While the payment of royalties by the Debtor certainly implies that the Debtor purchased and sold the underlying goods, this declaration does not specifically state who purchased the goods that are the basis of the Century 21 Claim or who was entitled to the proceeds of those sales.

In his certification submitted as part of the adversary proceeding complaint, and subsequently in support of the Aggarwal Parties' assertion of ownership of the Century 21 Claim, Mr. Aggarwal referred to Century 21 in explaining the events that led to the instant bankruptcy proceeding and stated that he had "full knowledge of the financial condition of Century 21 since 2019 and had anticipated a possible bankruptcy filing" so that in the summer of 2020 he "required Century 21 to pay for 60% of the value of the goods in advance of delivery." *Main Dkt. No.* 64-3 at ¶ 152. These statements similarly do not directly specify who purchased the goods sold to Century 21 or who was entitled to the proceeds of the sales.

The Aggarwal Parties' counsel also emailed certain documents as attachments to the Court in May 2023; however, the Aggarwal Parties did not provide any supplemental certification with those papers. *Email Chain from the Aggarwal Parties' Counsel to Court* (May 30, 2023). The documents included: (i) the actual Proof of Claim filed in the Century 21 Dispute; (ii) checks from Century 21; (iii) invoices for the goods sold to Century 21; (iv) bills of lading; and (v) email threads between Mr. Aggarwal and Century 21. *Id.*[2]

(a) <u>The Century 21 Proof of Claim</u>

The Court finds that the Century 21 Proof of Claim, which was signed under the penalty of perjury, is the most relevant and reliable evidence on the ownership issue. The Proof of Claim

---

[2] The Debtor caused the Century 21 Proof of Claim to be filed on September 11, 2020. *Main Dkt. No.* 130 at 21-24.

**LETTER OPINION**

Page 6
Re:         In re Laura Cantor Inc.
Case No.:   22-10406 (VFP)
Date:       January 23, 2024

---

states the creditor is "Sonja by Sonja Morgan (Laura Cantor, Inc.)" and indicates no one else acquired the Claim. *Main Dkt. No.* 130 at 21-24. Relatedly, the signature box indicates that Laura Cantor signed the Proof of Claim on behalf of the Debtor as "the trustee, or the debtor, or their authorized agent" under Bankruptcy Rule 3003, as opposed to the "the creditor" of Century 21, which would require a different box to be checked. *Id.* at 23. Also consistent with an agency relationship, the five checks from Century 21 that were delivered to the Debtor and produced by the Aggarwal Parties' counsel to the Court were payable to:

> SONJA BY SONJA MORGAN
> c/o LAURA CANTOR, INC.
> 234 CEDAR STREET
> ENGLEWOOD NJ 07631

*Email Chain from the Aggarwal Parties' Counsel to Court* (May 30, 2023) at Ex. L. Furthermore, the advices attached to the checks state the vendor's name is "SONJA BY SONJA MORGAN." *Id.* The invoices for the goods sold to Century 21 (which are attached to the Proof of Claim) reference only SBSM in the heading and instruct payment remittance in the same manner as the checks — SBSM c/o Laura Cantor, Inc. *Id.* at Ex. I. The bills of lading for the goods state that SBSM shipped the goods without mentioning Laura Cantor, Inc. *Id.* at Ex. N. The Aggarwal Parties' counsel also submitted email threads between Mr. Aggarwal and Century 21 in which the parties discuss how Century 21 will make its payments for the goods, including that Century 21 will pre-pay a portion of the goods price. *Id.* at Ex. K. There, Mr. Aggarwal instructs Century 21 to send checks care of "Laura Cantor Inc. (Agent)." *Id.*

As noted previously, in a final effort to supplement the record regarding the Century 21 Claim ownership dispute, on November 7, 2023, the Court emailed the parties to explicitly ask who paid for the goods that were ultimately sold to Century 21 and to produce proof of it along with any related evidence or legal argument that could prove ownership. *Email Chain from the Court to Counsel for the Debtor and Aggarwal Parties* (Nov. 7, 2023). The Debtor did not respond to the Court's correspondence, but Debtor's counsel did previously state that the Debtor paid for the Century 21 goods. *Email Chain from the Debtor's Counsel to Court* (May 30, 2023). The Aggarwal Parties' counsel submitted a response with similar materials as provided in their May 2023 correspondence. *Email Chains from the Aggarwal Parties' Counsel to Court* (May 30, 2023; Nov. 7 and 14, 2023). In response to the Court's question regarding payment of the goods sold to Century 21, the Aggarwal Parties' counsel stated that Everyday and its agents paid for the goods ultimately sold to Century 21 and that neither the Debtor nor its agents paid for any of the goods. *Id.* However, that submission was not accompanied by any certification or declaration by a person with actual knowledge. The conflicting statement by the Debtor's counsel that the Debtor owned the goods sold to Century 21 similarly was not accompanied by a certification or declaration based on personal knowledge.

**LETTER OPINION**

Page 7
Re:        In re Laura Cantor Inc.
Case No.:  22-10406 (VFP)
Date:      January 23, 2024

---

    D.  <u>Legal Analysis</u>

       As noted, the sole issue before the Court is who owns the Century 21 Claim. Debtor's counsel and the Aggarwal Parties' counsel each asserted that their client owns the Claim and paid for the goods that were ultimately sold to Century 21. Relatedly, the parties disputed whether the Debtor was acting as the Aggarwal Parties' agent with respect to the SBSM goods. *Main Dkt. No.* 98 at 56-60; *Email Chain from the Aggarwal Parties' Counsel to Court* (May 30, 2023). Given the directly contradictory assertions, the Court must look at the evidence provided by the parties and make a determination as to the ownership of the Century 21 Claim and, relatedly, whether the Debtor was acting as the Aggarwal Parties' agent in connection with the Century 21 transactions. Making these factual and legal determinations requires the Court to determine what evidence is admissible and assess the credibility and sufficiency of that evidence. The Court does each in turn.

    1.  *Admissibility of the Evidence Provided*

       The evidence submitted to the Court on the Century 21 Dispute falls into three categories with varying degrees of admissibility. The first category includes the Proof of Claim, Ms. Cantor's declarations, and Mr. Aggarwal's certifications. *Main Dkt. Nos.* 11; 64-3; 130 at 20-23. All the factual assertions in the first category are potentially admissible (though not necessarily relevant or dispositive) in this "on the papers" proceeding because the statements were made under the threat of perjury and by individuals with personal knowledge of the facts asserted. FRE 402, 602.

       The second category contains the statements made by the Debtor's counsel and counsel for the Aggarwal Parties at various hearings and in submissions to Court. *See, e.g.*, *Main Dkt. No.* 98 at 56-65; *Email Chain from Debtor's Counsel to Court* (May 30, 2023); *Email Chain from the Aggarwal Parties' Counsel to Court* (May 30, 2023). This second category also includes Mr. Aggarwal's statements directly to the Court during the January 31, 2023 hearing. *Main Dkt. No.* 98 at 56-65. The statements made by counsel for the Debtor and counsel for the Aggarwal Parties were not based on personal knowledge, were not made under oath or subject to cross-examination, and, at best, were hearsay and legal conclusions as to the ownership of the Century 21 Claim. *Id.*; *Email Chain from Debtor's Counsel to Court* (May 30, 2023); *Email Chain from the Aggarwal Parties' Counsel to Court* (May 30, 2023). Accordingly, the Court is not considering the factual assertions made by the parties' counsel. FRE 602. While Mr. Aggarwal at least arguably had personal knowledge of the matters he made statements about during the January hearing, he was not under the threat of perjury for those statements, nor was he subject to cross-examination. Accordingly, Mr. Aggarwal's statements at the hearing are similarly not being considered as evidence by this Court.

       The third category consists of the business documents – the checks, invoices, bills of lading, and email threads – that the Aggarwal Parties' counsel emailed to the Court after the

**LETTER OPINION**

Page 8
Re:        In re Laura Cantor Inc.
Case No.:  22-10406 (VFP)
Date:      January 23, 2024

January hearing. *Email Chain from the Aggarwal Parties' Counsel to Court* (May 30, 2023). Under Federal Rule of Evidence 803(6), the documents could arguably satisfy the business record exception to hearsay – an element of which includes testimony or a certification about the document's custody – or the residual exception to the Hearsay Rule (FRE 807) so as to be admissible.

    2. *Assessing the Evidence*

Weighing the admissible evidence, the Court finds that the Aggarwal Parties own the Century 21 Claim, and that the Debtor was acting as an agent for Everyday in selling the SBSM goods. "An agency relationship is created 'when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" *New Jersey Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co*., 203 N.J. 208, 220 (2010) (*quoting Restatement (Third) of Agency* § 1.01 (2006)). To determine if an agency relationship exists, the Court must examine the totality of circumstances for what is ultimately a factual determination. *Id.*

As noted above, the Court finds that the Proof of Claim – which was signed under penalty of perjury and is an admission by the Debtor – provides the most reliable and relevant evidence for determining the Claim's ownership as well as the capacity in which the Debtor filed the Century 21 Claim. The Proof of Claim states that SBSM was Century 21's creditor, while referencing the Debtor in parenthesis, and that the Debtor filed the Claim in its capacity as agent. In other words, the Debtor caused the Century 21 Proof of Claim to be filed, but listed SBSM as the creditor (rather than itself) by indicating that the Debtor was acting as "the trustee, or the debtor, or their authorized agent," instead of checking the box that indicated that Laura Cantor Inc. was itself the creditor. *Main Dkt. No*. 130 at 23. Because nothing suggests that the Debtor filed the form as a trustee or as the Century 21 Debtor itself, by checking that box, the Debtor indicated it was filing the Claim as an "agent" for the creditor, SBSM.

Although admissible, the Court finds that Ms. Cantor's declarations and Mr. Aggarwal's certifications and/or verifications do not provide directly supportive factual evidence as to the ownership issue. Ms. Cantor made her declarations early in the case – before the Century 21 Claim ownership issue arose. These declarations at least arguably could be understood to indicate that the Debtor owned the Century 21 Claim, but did not explicitly do so – notwithstanding several opportunities the Court subsequently gave the Debtor to do just that. *Main Dkt. No.* 11 at ¶ 22. In his declaration, Mr. Aggarwal discussed his communication with Century 21 as part of his explanation of the events that led to the instant bankruptcy proceeding. *Main Dkt. No.* 64-3 at ¶ 152. He stated that he thought Century 21 might enter bankruptcy and that he therefore required a 60% pre-payment from Century 21 in the 2020 summer. *Id.* While Mr. Aggarwal's discussions with Century 21 show he was involved with SBSM's (and the Debtor's) transactions with Century 21 in some capacity, the Court finds that those general discussions are

**LETTER OPINION**

Page 9
Re:       In re Laura Cantor Inc.
Case No.: 22-10406 (VFP)
Date:     January 23, 2024

also not directly supportive or determinative of the ownership issue.

Although the Court also finds that the business documents provided to the Court are less persuasive than the Proof of Claim because those documents were unaccompanied by testimony or certification, those materials further support the Court's decision and were not disputed by the Debtor. The documents also have the hallmarks of relevancy and trustworthiness as ordinary business documents exchanged between the parties, which further supports the Court's consideration of those documents. *See* FRE 401, 807. Specifically, those documents support the Aggarwal Parties' position that the Debtor was acting as agent for SBSM, and that SBSM was the vendor. The checks and attached advices name SBSM as both the payee and vendor and state "care of Laura Cantor, Inc.," which is also consistent with an agency relationship. *See Email Chain from the Aggarwal Parties' Counsel to Court* (May 30, 2023). Similarly, the invoices list SBSM at the top of the document and only mention Laura Cantor Inc. with "care of" in the payment remittance portion of the forms. *Id.* The bills of lading do not include Laura Cantor Inc. at all. *Id.* The Court also finds it notable that the Debtor did not contest the Aggarwal Parties' documents and did not respond to the Court's latest emails that allowed the record on this issue to be supplemented.

For all these reasons, the Court finds that the Aggarwal Parties provided sufficient proof for this Court to conclude that they own the Century 21 Claim and that the Debtor acted as their agent in effectuating these transactions. As noted, the Proof of Claim, like the business documents submitted by the Aggarwal Parties, all support the Aggarwal Parties' position that they owned the goods sold to Century 21, were entitled to their proceeds, and that the Debtor was acting as agent for them in selling the SBSM goods. The Debtor never indicated that it had anything more than an unwritten license agreement with Everyday to sell the SBSM goods and never produced any direct, admissible evidence demonstrating that it paid for the SBSM goods sold to Century 21. In contrast, the Proof of Claim that was prepared and submitted by the Debtor (through Ms. Cantor) to the Bankruptcy Court in New York supports the Aggarwal Parties' argument that they owned the Century 21 Claim and that the Debtor was acting as Everyday's agent in its dealings with SBSM, as do the business documents submitted by the Aggarwal Parties.

E. Conclusion

Based on the evidence presented by the parties, the Court determines that Laura Cantor Inc. was an agent for the Aggarwal Parties in selling the SBSM goods to Century 21. SBSM was the actual vendor/creditor and, as between the Aggarwal Parties and the Debtor, the Aggarwal Parties are the rightful owners of the Century 21 Proof of Claim. In rendering this decision, the Court specifically takes no position and is making no determination as to the right of any other party to the Century 21 Proof of Claim or its proceeds. That issue, if it exists, is not before the Court, as it would be between persons or entities other than the Debtor and the Aggarwal Parties. An appropriate Order will be entered by the Court.

**LETTER OPINION**

Page 10
Re:        In re Laura Cantor Inc.
Case No.:  22-10406 (VFP)
Date:      January 23, 2024

        Very truly yours,

        /s/ *Vincent F. Papalia*

        Vincent F. Papalia
        United States Bankruptcy Court

VFP/gs
Enclosures

cc: Fran Steele, Esq. (CM-ECF)
    Chad Brian Friedman, Esq. (CM-ECF)
    Adam Love, Esq. (CM-ECF)